UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DIANA NUNES,**

    **Plaintiff,**

v.                                    **CASE NO. 8:07-CV-01136-T-EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**
_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383( c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1]

The undersigned, after reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case, as well as the relevant statutory and case law, affirms the decision of the ALJ denying Plaintiff's claim.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405 (g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler,

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 12).

703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).[2]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff filed her application for DIB and SSI on September 4, 2003, with an alleged onset of disability of September 14, 2002. (T 13) Plaintiff's application was denied initially and on reconsideration. (T 43-44) Hearings were held before the ALJ on May 26, 2006, and August 14, 2006. (T 578, 529) On October 23, 2006, the ALJ issued a decision denying Plaintiff's application for benefits. (T 10-25) The Appeals Council declined to review the ALJ's decision, (T 4-6) making the ALJ's decision the final decision of the Commissioner.

At the time of the August 14, 2006 hearing, Plaintiff was forty-four years old and had a twelfth grade education. (T 532) Her last work experience was as a cleaning contractor; her past work experience was as an operating room assistant and a nursing home assistant. (T 168-73, 534-35) Plaintiff claims disability due to hepatitis C, diabetes, ulcerative colitis, diabetic neuropathy, rheumatoid arthritis, depression, and bipolar disorder. (T 48)

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981).

In the decision denying benefits, the ALJ found that Plaintiff was insured for disability benefits through June 30, 2007; therefore, Plaintiff had to establish that her disability commenced on or prior to June 30, 2007. (T 15) The ALJ then followed the five step sequential evaluation process to determine if Plaintiff were disabled. First, the ALJ found that Plaintiff did not engage in substantial gainful activity after the alleged onset of disability. (T 15) Second, the ALJ found that Plaintiff had severe impairments due to hepatitis C, diabetes mellitus, neuropathy, and depression. (T 15-16)

Third, the ALJ determined that Plaintiff's severe impairments did not, individually or in combination, meet or medically equal any of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (T 16) After considering the entirety of the record, the ALJ held that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work.[3] (T 16) Specifically, the ALJ found that:

> The claimant has the ability to occasionally lift/carry 20 pounds, and the ability to frequently lift or carry 10 pounds. She also has the ability to stand/walk for three to four hours during an eight hour workday, and sit for six hours during an eight hour workday. The claimant is occasionally able to climb, balance, stoop, kneel, crouch, and crawl. She can occasionally push/pull with her left upper extremity. The claimant can frequently use her left upper extremity for handling, fingering, and feeling, and occasionally use her right dominate upper extremity for handling, fingering, and feeling. As a result of the claimant's mental impairment she is frequently able to concentrate, persist, or pace. Specifically, the claimant's mental impairment imposes mild limitations in the area of activities of daily

---

[3] Light work involves the lifting of not more than twenty pounds occasionally with frequent lifting and carrying of objects weighing up to ten pounds. The regulations provide: "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

> living and in the area of maintaining social functioning. The claimant
> has moderate limitations in the area of concentration, persistence, or
> pace and [h]as never experienced an episode of decompensation.

(T 16) In reaching this conclusion, the ALJ determined that Plaintiff's statements regarding her impairments and their impact on her ability to work were "not entirely credible." (T 22)

Fourth, based on his decision regarding Plaintiff's RFC, the ALJ determined that Plaintiff is unable to perform any past relevant work. (T 23) Fifth, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform other work found in significant numbers in the national economy. (T 23) After taking testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff could perform light unskilled work in occupations such as arcade attendant (DOT 342.667-014), telephone survey worker (DOT 205.367-054), and produce inspector (DOT 529.687-186). (T 24) Thus, the ALJ determined that, from the date of alleged onset of disability through the date of the ALJ's decision, Plaintiff was not disabled under the Act. (T 25)

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

**II.**

Plaintiff alleges that the Commissioner erred by (1) failing to fully and adequately consider the severity of all of Plaintiff's impairments; (2) failing to consider all of Plaintiff's impairments when assessing Plaintiff's RFC; (3) failing to obtain a reasonable explanation of an alleged conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); and (4) failing to "adequately consider [Plaintiff's] subjective testimony and assertions." (Dkt. 20 at 7-10)

**A.** Plaintiff claims that the ALJ erred by failing "to evaluate the severity" of Plaintiff's complaints of headaches, back pain, and visual problems as well as medical findings of bilateral

4

carpal tunnel syndrome (Dkt. 20 at 7-8). Defendant responds that the ALJ followed the sequential evaluation process correctly and gave due consideration to Plaintiff's alleged impairments. (Dkt. 23)

The ALJ must consider each alleged impairment and "state the weight accorded [to] each item of impairment evidence and the reasons for his decisions on such evidence." Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). In addition, the ALJ must explain whether the impairments are severe singularly and in combination. Id. The combined effect of impairments must be considered even if any of the impairments considered separately are not "severe." Hudson v. Heckler, 755 F.2d 781, 785-786 (11th Cir. 1985). A statement by the ALJ that the combined effect of a plaintiff's impairments does not render him or her disabled is sufficient to show that the ALJ addressed the combination issue. Jones v. HHS, 941 F.2d 1529, 1533 (11th Cir. 1991); Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

The ALJ found that Plaintiff "[d]id not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." (T 16) The express statement made by the ALJ indicates that the combination of impairments were properly considered and complies with the requirements of Jones and Wheeler. Therefore, this issue does not entitle Plaintiff to relief.

**B.** Plaintiff contends that the ALJ erred by failing to "evaluate the severity" of Plaintiff's alleged headaches, back pain, visual problems, and bilateral carpal tunnel syndrome when assessing Plaintiff's RFC (Dkt. 20 at 7-8).

In support of her claim, Plaintiff relies on Williams v. Barnhart, 186 F. Supp. 2d 1192, 1197-98 (M.D. Ala. 2002), which held that the ALJ's decision was not supported by substantial

evidence if the ALJ failed to "assess the severity" of the plaintiff's alleged impairments. Id. at 1197. Williams is easily distinguished. In that case, the ALJ failed to address several alleged supported by pertinent medical findings. Id. at 1198. In the instant case, by contrast, the ALJ addressed all of Plaintiff's impairments, even those impairments he found to be not severe, and thoroughly examined the record evidence, including medical opinions and Plaintiff's subjective statements, in assessing Plaintiff's RFC. (T 16-23)

With regard to Plaintiff's allegations of headaches, the ALJ observed that Plaintiff complained of headaches during a visit with Jay K. Kamath ("Dr. Kamath") on February 4, 2003. (T 18, T 255) On November 18, 2003, Dr. Kamath wrote: "Patient states that she . . . suffers from frequent headaches. (T 244) Dr. Kamath noted that Plaintiff reported "bilateral ear discomfort and a chronic cough at night" in relation to her headaches. (Id.) In February and April of 2004, Plaintiff mentioned intermittent headaches when treated by Adrianne Payne, M.D. ("Dr. Payne"). (T 329, 331) Similarly, on February 19, 2004, Robert Miles, D.O. ("Dr. Miles") noted that Plaintiff complained of tension headaches. (T 294) Nothing in the record suggests that Plaintiff's headaches preclude her from performing a limited range of light work.

The ALJ also reviewed Plaintiff's complaints of back injuries caused by a November 17, 2003 automobile accident. (T 19-20 ) On November 20, 2003, Plaintiff was seen by Lydia Hartney, A.R.N.P. ("Hartney") for cervical and lumbar pain. (T 336, 425) During Hartney's examination, Plaintiff reported tenderness and tightness in the lumbar areas of the spine. (T 337) Plaintiff was prescribed over-the-counter pain medications and started on a conservative physical therapy regimen. (T 338) Plaintiff advised Hartley that she was a part-time cleaner and "has been able to work with no problems." (Id.)

In January 2004, Dr. Payne instructed Plaintiff to continue her current medications, physical therapy, and stretching program. (T 333) In February 2004, Plaintiff reported to Dr. Payne that her lower back was feeling better. (T 331) On April 1, 2004, Dr. Payne reported that Plaintiff had mild hypertonicity of the cervical spine and moderate hypertonicity into the middle and lower portions of the lumbar spine. (T 329) Plaintiff had 5/5 strength in both upper and lower extremities with good muscular tone and range of motion; Plaintiff's straight leg raise testing was negative bilaterally. (Id.) Dr. Payne determined that Plaintiff had decreased sensation through out her right hand and Tinel's sign was positive on the right side. (Id.) In addition, Plaintiff had some edema in her right hand due to arthritis. (Id.) Due to the length of time since Plaintiff's injury and based on available documentation, Dr. Payne opined that Plaintiff had sustained a permanent injury within a reasonable degree of medical probability. (T 330) Dr. Payne calculated a 10 percent whole person impairment for Plaintiff's injuries caused by the motor vehicle accident. (Id.)

In April 2005, Plaintiff was seen by Antony Sankoorikal, M.D. ("Dr. Sankoorikal") for complaints of lower back pain. Dr. Sankoorikal's examination revealed that Plaintiff's spinal movements were within normal limits and there was no spinal tenderness or spasms. (T 523) In July 2005, Dr. Sankoorikal saw Plaintiff for complaints of pain in her right hip, hands, and arms; Dr. Sankoorikal noted that Plaintiff had no spinal tenderness or spasms but a soft tissue examination revealed tender points in Plaintiff's lower back. (T 522)

On September 30, 2005, Clinton B. Davis, M.D. ("Dr. Davis") reported that Plaintiff complained of low back pain, (T 451); in a follow up appointment on December 7, 2005, Dr. Davis reported that Plaintiff "continues with the moderately severe low back pain which she has

had for many years" and treats with "moist heat, stretching exercises, and walking." (T 450) Dr. Davis noted that Plaintiff was able to flex at the waist to 45 to 50 degrees without difficulty, extend at the waist to 15 degrees with no pain, and bend 30 degrees both to the left and right with some discomfort. (Id.) Dr. Davis's impression was that Plaintiff likely had degenerative disc disease but that she did not require surgery and pain management was recommended. (T 450) On March 9, 2006, Jon Cobb, M.D. ("Dr. Cobb"), an emergency room physician at Mease Countryside Hospital, reported that Plaintiff suffered "acute back strain" while moving a bed.[4] (T 499) Plaintiff was prescribed pain medication and released. (T 496) Plaintiff fails to cite to any medical records which support her claim that back pain prevented her from working. Thus, Plaintiff has not shown that the ALJ did not adequately consider Plaintiff's back pain or its effect on her ability to work in combination with her other impairments.

On October 28, 2003, William C. Hulley, D.O., M.P.H. ("Dr. Hulley"), a neurologist, reported that tests showed that Plaintiff had bilateral carpal tunnel syndrome, right greater than left. (T 239) On May 23, 2005, a physician at Bestcare Family & Geriatric Care diagnosed Plaintiff with eye ulcers, and, on May 27, 2005, a physician at Mease Countryside Hospital found Plaintiff to have eye ulcers; both physicians referred Plaintiff to an ophthalmologist. (T 426-27, 474-75) Plaintiff's physicians did not indicate that Plaintiff's carpel tunnel syndrome and vision problems caused significant limitations beyond those found by the ALJ.

RFC is a medical determination made by the ALJ. See generally 20 C.F.R. §§416.945,

---

[4] Additionally, moving a bed is an activity beyond the light work required of occupations listed by the VE. See 20 C.F.R. §§ 404.1567(b), 416.967(b). Therefore, Plaintiff's inability to move her bed without pain does not necessarily show that she cannot perform a limited range of light work.

416.946 (2008). The ALJ found Plaintiff not entirely credible as to her self-reported limitations and considered the reports of various physicians – none of whom indicated that Plaintiff's headaches, back pain, carpal tunnel syndrome, and vision problems could keep her from performing a limited range of light work. In determining Plaintiff's RFC, the ALJ rejected these additional limitations as inconsistent with the record. (T 22)  The ALJ supported this finding, in part, by considering that Plaintiff was inconsistent in her statements to physicians: she claimed she could work with no problems on November 20, 2003, (T 338) and she was a part-time house keeper in June 2006.  (T 506)   In June 2006, Plaintiff's physician also stated that discussions regarding Plaintiff's treatment for hepatitis B would have to be scheduled at a later time because Plaintiff was "quite busy with many other personal issues regarding adopting a daughter."  (T 506)  At the August 14, 2006 hearing, Plaintiff stated that she continued cleaning houses part-time even while claiming she could do very little. (T 535)  Furthermore, the ALJ determined that Plaintiff's forgery of prescription documents in September 2005 discredited her reports of the severity of her impairments.  (T 461)  Thus, the ALJ did not err in rejecting Plaintiff's allegations of additional limitations.

There is no merit in Plaintiff's claim that the ALJ erred by failing to "evaluate the severity" of Plaintiff's alleged headaches, back pain, visual problems, and bilateral carpal tunnel syndrome when assessing Plaintiff's RFC.

**C.**     Plaintiff alleges that the ALJ failed to obtain a reasonable explanation of an alleged conflict between the VE's testimony and the DOT. First, Plaintiff contends that the DOT definitions of arcade attendant (DOT 342.667-014), telephone survey worker (DOT 205.367-054), and produce inspector (DOT 529.687-186) are inconsistent with the VE's testimony that Plaintiff could perform

these jobs. (Dkt. 20 at 9) Second, Plaintiff contends that if the VE's testimony conflicts with the DOT, the ALJ has an affirmative obligation to obtain a reasonable explanation of the conflict from the VE. (Dkt 20 at 9). Plaintiff relies on Social Security Ruling 00-4p, which states that "the adjudicator must resolve" conflict between the VE's testimony and the DOT before he can rely on the VE's testimony to support a decision regarding the plaintiff's disability status. S.S.R. 00-4p, (2000).

Even assuming that an inconsistency existed between the testimony of the VE and the DOT,[5] the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the vocational expert. See Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 661 (11th Cir. 2007) (per curiam)(ALJ's failure to resolve conflict between VE's testimony and the DOT prior to relying on VE's testimony does not constitute error). Moreover, agency rulings do not bind this court and do not have the force and effect of law. Id. at 662 (quoting B.B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. 1981). The Eleventh Circuit precedent establishes that the testimony of a VE "trumps" an inconsistent provision of the DOT. See Jones v. Apfel, 190 F.3d 1224, 1228-29 (11th Cir. 1999).

Thus, the ALJ properly relied on the VE's testimony in assessing Plaintiff's RFC.

**D.** Plaintiff alleges that the ALJ failed to "adequately consider [Plaintiff's] subjective's testimony and assertions" (Dkt. 20 at 2). Plaintiff makes this contention but fails to support it with any legal argument or factual evidence. This contention is not properly developed in Plaintiff's

---

[5] In this case, the ALJ asked the VE if his testimony was consistent with the DOT, and if not, to explain the inconsistencies. (T 564) The VE did not identify any conflicts. (Id.) At the hearing, Plaintiff, who was represented by counsel, did not challenge the VE's testimony or identify any inconsistencies between the VE's testimony and the DOT. (T 564, T 568-77)

memorandum of law and is therefore not reached.  See NLRB v. McClain of Georgia, Inc., 138 F.3d 1418, 1422 (11th Cir. 1998); Callahan v. Barnhart, 186 F. Supp. 2d 1219, 1230 n.5 (M.D. Fla. 2002).

### Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED** and **ADJUDGED** that:

(1) The decision of the Commissioner is **AFFIRMED**, and this case is **DISMISSED**, each party to bear its own costs and expenses; and

(2) the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**DONE AND ORDERED** in Tampa, Florida on this 15th  day of September, 2008.

_____
ELIZABETH A JENKINS
United States Magistrate Judge